683 P.2d 448

STATE of Idaho, Plaintiff-Appellant,

v.

John Wilford LEWIS, Defendant-Respondent.

No. 14075.

Court of Appeals of Idaho.

June 5, 1984.

Petition for Review Granted July 27, 1984.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Fred C. Goodenough, Myrna A.I. Stahman, Deputy Attys. Gen., Boise, for plaintiff-appellant.

Keith A. Zollinger, Pocatello, for defendant-respondent.

BURNETT, Judge.

In this case we review an order suppressing evidence seized during the nighttime search of a residence. The question presented is whether an affidavit supporting the application for a search warrant contained sufficient justification for the nighttime search. The district court concluded that it did not. The state has brought this interlocutory appeal. We affirm the order.

Part I of our opinion identifies the standards, constitutional and statutory, governing nighttime search warrants. Part II applies these standards to the warrant in the present case, concluding that the warrant was issued in violation of an Idaho statute. In Part III we consider whether violation of the statute should invoke an exclusionary rule, requiring suppression of the evidence seized. We hold that it should.

I

All searches—whether conducted during the day or at night—are subject to

the strictures of the fourth amendment to the United States Constitution. The fourth amendment states, in part, that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In Idaho, searches also must comply with art. I, § 17 of our state constitution. Its language is virtually identical to the fourth amendment except that the "oath or affirmation" is termed an "affidavit." This similarity of language does not necessarily signify that the federal and state constitutions always carry the same meaning, but we draw no distinction in our opinion today.

Both constitutions require a search warrant to be based upon a showing of probable cause. Conversely, neither constitution expressly requires a more rigorous showing of cause for a night search than for a day search. Federal courts generally have declined to hold that the federal constitution requires special circumstances to justify nighttime execution of search warrants. *See* 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 6.2(c) (2d ed.1983). Similarly, our research fails to reveal any Idaho Supreme Court decision holding that our state constitution imposes special requirements for nighttime searches.

■ Nevertheless, nighttime searches represent a special area of concern in the relationship between government and the private citizen. Justice Harlan once stated that "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). Justice Frankfurter similarly characterized nighttime searches as "official intrusion ... in its most obnoxious form." *Monroe v. Pape,* 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492 (1962) (Frankfurter, J., concurring and dissenting). As one court has observed, "A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking

has a search warrant." *United States v. Smith,* 340 F.Supp. 1023, 1029 (D.Conn. 1972). Moreover, the special concerns attending to nighttime searches are not limited to the citizen's right to be left alone; they also include police safety. As noted by the Oregon Court of Appeals in *State v. Brock,* 53 Or.App. 785, 633 P.2d 805, 810 (1981), nighttime searches "are more likely, when compared to searches conducted during the daytime, to be met with armed resistance."

Consequently, despite the lack of explicit constitutional recognition of the special character of nighttime searches—or perhaps because of it—some twenty-three states and the federal government have undertaken to regulate nighttime searches by rule or statute. Carr, *Nighttime Searches,* 9 SEARCH & SEIZURE LAW REPORT 89 (1982). Idaho is among those states. Idaho Code § 19–4411, which has statutory antecedents tracing back to territorial days, provides that a magistrate may authorize a nighttime search only if "the affidavits are positive that the property is on the person or in the place to be searched." More recently, the Idaho Supreme Court has adopted I.C.R. 41(c), which provides that search warrants shall be served in the daytime unless "the issuing authority" authorizes its execution at night "for reasonable cause shown."

■ In the present case, the state has argued that Rule 41(c) supersedes I.C. § 19–4411 and imposes a more lenient requirement for authorizing nighttime searches. This argument is based, in part, upon a footnote in *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979), where our Supreme Court suggested that "I.C.R. 41 would control to the exclusion of I.C. § 19–4411." *Id.* at 42 n. 5, 592 P.2d at 857 n. 5. However, the court acknowledged that this suggestion was not necessary to its decision in the case before it. In fact, the court in *Lindner* upheld a nighttime warrant upon a finding that its supporting affidavit had met the purportedly higher standard of I.C. § 19–4411.

In *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983), we recently said that the rule and the statute are not contradictory but are complementary. Accordingly, we held:

> [T]o justify nighttime execution of the warrant, the *affidavit* must both show reasonable cause for conducting the search at night, and must be positive that controlled substances are in the place to be searched. [Emphasis in original.]

*Id.* at 10, 674 P.2d at 439. We also explained the practical meaning of the positiveness requirement. Quoting from *United States v. Daniels*, 10 F.R.D. 225, 228 (D.C.N.J.1950), we said:

> [T]he [statute] requires nothing more than an explicit statement, supported by positive evidence, as distinguished from negative evidence, "that the property is in the place to be searched." The explicit statement may not rest upon inferences drawn from the absence of evidence. The [statute] requires averments of facts sufficiently persuasive to support a reasonable inference that the property is in fact on the premises.

This view of the positiveness requirement has been adopted by our Supreme Court in *Lindner*, where the court also quoted the foregoing language from the *Daniels* decision.

## II

We now focus upon the instant case. The record consists primarily of the affidavit and search warrant. It appears from the affidavit that during early morning hours, two undercover policemen were invited to a residence in Pocatello. They negotiated to buy marijuana from individuals named Kaye Owsley and Robert Molinelli. When one of the officers was handed a "baggie" containing a small amount of marijuana, he feigned an interest in purchasing a larger quantity and asked how much could be provided. Owsley replied, "Five pounds." The officers then arrested both Owsley and Molinelli.[1]

The police then made arrangements to search the house without delay. They were unaware that John Lewis, the defendant in this case, was asleep in a basement bedroom. An affidavit was prepared and submitted to a magistrate, who issued a search warrant. The warrant commanded an immediate search of the residence "in the daytime, or night."[2] The search was conducted during hours of darkness. Slightly more than three ounces of marijuana were found in Lewis's bedroom. He was arrested and charged with felony possession of marijuana. I.C. § 37–2732(e).

A magistrate's decision to issue a search warrant, and to authorize nighttime execution of the warrant, will not be overturned absent an abuse of discretion. *State v. Fowler, supra.* However, the magistrate is not cloaked with a discretionary power to authorize nighttime searches despite a failure by the affidavit to satisfy the positiveness requirement of I.C. § 19–4411. The presence or absence of a positive statement in the affidavit "that the property is ... in the place to be searched" is a point readily discernible from the record by the district judge and by an appellate court.

Here, the affidavit fails to satisfy the positiveness requirement. It contains no explicit statement, supported by positive evidence, "that the property ... is in the place to be searched." The only language of the affidavit approximating such an explicit statement is the declaration "that just

---

1. Charges against Owsley ultimately were dismissed. *See State v. Owsley*, 105 Idaho 836, 673 P.2d 436 (1983). Molinelli received a withheld judgment for misdemeanor possession of less than three ounces of marijuana. *See State v. Molinelli*, 105 Idaho 833, 673 P.2d 433 (1983).

2. The warrant was a standard form employed by the prosecutor, containing the language "in the daytime, or night" as boilerplate. The district judge, as part of his suppression ruling, recommended that the form be revised so nighttime searches would not automatically be authorized. At oral argument, we were advised that this recommendation now is being implemented.

prior to placing [Owsley and Molinelli] under arrest, your affiant asked how much they could provide and your affiant understood Kaye Owsley to say five pounds." However, this language contains no averments of fact sufficiently persuasive to support a reasonable inference that the property was in fact on the premises. The affidavit, even when read in best light, merely invited the magistrate to speculate —wrongly, as it turned out—that "five pounds" of marijuana were in the house. There is a clear distinction between a reasonable inference, upon positive evidence, and the kind of speculation invited by this affidavit. We agree with the district court that the affidavit failed to meet the positiveness requirement of I.C. § 19–4411. Therefore, the search warrant issued upon the affidavit was fatally defective.

### III

■ We now consider whether the evidence obtained during the search should have been suppressed. Suppression is the product of an exclusionary rule. The courts and law enforcement authorities are familiar with the exclusionary rule barring use in federal or state trial courts of evidence seized in violation of constitutional protections. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (state courts); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (federal courts). This exclusionary rule— which has garnered both praise and condemnation in public discussion—has been recognized as an essential adjunct of constitutional rights. The purposes commonly ascribed to the rule are to give real meaning to the words of the federal and state constitutions; to protect every citizen's right to privacy; to uphold the integrity and impartiality of the judicial system, by freeing the courts from participating in illegal behavior by using evidence obtained by it; and to deter government officials from breaking the law in the name of enforcing it.

The courts are divided on whether the constitutional exclusionary rule should have a counterpart for violations of rules or statutes. *Compare, e.g., Henry v. State,* 373 A.2d 575 (Del.1977) (excluding evidence) *with State v. Kalai,* 56 Haw. 366, 537 P.2d 8 (1975) (allowing evidence to be used). Some courts have adopted a balancing approach, suggesting that evidence should be excluded only when the interest protected by the statute or rule is so important, or has been so flagrantly violated, that it outweighs society's interest in using the evidence obtained. *See, e.g., United States v. Searp,* 586 F.2d 1117 (6th Cir. 1978).

Our Supreme Court also has expressed mixed feelings on the subject. In *State v. Culbertson,* 105 Idaho 128, 131 n. 2, 666 P.2d 1139, 1142 n. 2 (1983), the court openly questioned whether an exclusionary rule should apply to violations of statutes governing statements obtained from accused persons. On the other hand, in *State v. Rauch,* 99 Idaho 586, 586 P.2d 671 (1978), the court excluded evidence obtained in violation of Idaho's "knock and announce" statute. *Compare State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983) (refusing to exclude evidence seized by officials of *another* state in violation of an Idaho statute).

■ We do not believe that citizen rights necessarily are less deserving of vindication, through an exclusionary rule, simply because they are embodied in a rule or statute rather than in a constitutional provision. Rules and statutes are not second-class laws. Often, as in the case of nighttime searches, they embody important values and protect fundamental rights. In this appeal we are concerned—as was the Supreme Court in *State v. Rauch, supra* —with the sanctity of the home and, in some instances, with the protection of police officers. We believe an exclusionary rule is appropriate to this type of case. We further believe that even those courts which espouse a balancing approach would be moved, upon the facts of this case, to hold that society's interest in protecting every citizen from illegal nighttime searches outweighs the interest in using

slightly more than three ounces of marijuana in evidence at a trial. Accordingly, we hold that an exclusionary rule should be applied in this case and that the evidence seized must be suppressed, as ordered by the district court.

We acknowledge the state's argument that an exclusionary rule should not apply if the police have acted in good faith. However, it is not necessary for us to become embroiled in that controversial issue here. In this case, it was not the police who violated I.C. § 19–4411. They did what the law requires of them. They applied for a search warrant and, upon receiving one, they executed it. The positiveness requirement of I.C. § 19–4411 is directed to magistrates, who must determine the sufficiency of affidavits submitted with applications for search warrants. The statute was abridged in this case, not by the police, but by the magistrate. The good faith of the police is unquestioned, but irrelevant to the instant appeal.

The district court's order, suppressing evidence obtained during the nighttime search, is affirmed.

WALTERS, C.J., concurs.

SWANSTROM, J., concurs in the result.