UNITED STATES of America,
Plaintiff–Appellee,

v.

Lawrence O. LARSON, Jr.,
Defendant–Appellant.

No. 00–10609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed Sept. 4, 2002.

---

Alexandra McClure, Assistant Federal Public Defender, San Francisco, CA, for defendant-appellant.

Sharon M. Bunzel (on brief), Miles Ehrlich (argued), Assistant United States Attorneys, San Francisco, CA, for plaintiff-appellee.

Before: CANBY, GRABER, and PAEZ, Circuit Judges.

PAEZ, Circuit Judge.

After a stipulated-facts court trial, the district court convicted Lawrence O. Larson, Jr., of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Larson appeals the district court's denial of his motion to suppress physical evidence and statements gathered in the course of a police stop and search of his vehicle. The government contends that Larson's challenge to the suppression ruling is moot because, in convicting Larson, the district court did not rely on the evidence that Larson sought to suppress.

Under the circumstances of this case, Larson's appeal of the suppression ruling may be moot. However, because Larson may not have knowingly and intelligently understood the consequences that the stipulation would have on his appeal, we remand this case to the district court for an evidentiary hearing.

## BACKGROUND

On August 3, 1999, Deputy Sheriff Howard Horwitz stopped the car Larson was driving on Highway 1 in California. In the course of the stop, Horwitz learned of an outstanding warrant for Larson's arrest for a probation violation based on unlawful possession of a weapon. In response to questioning, Larson told Horwitz that he had a gun underneath the driver's seat. Horwitz removed a gun and several other weapons from the car. Larson was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Larson moved to suppress his pre-*Miranda* statements to Horwitz and the gun as the fruit of those statements. The district court denied the motion with respect to Larson's statement that the gun was under the seat and declined to suppress the gun.

At the court trial, Larson and the prosecution stipulated to the following facts:

1. On August 3, 1999, in Marin County, California, the defendant Lawrence O. Larson, Jr.[,] knowingly had in his possession a Savage Arms Corp., .32 caliber, semi-automatic pistol, serial number 241120, and seventeen rounds of Winchester–Western ammunition.

2. The pistol and the firearm referenced in paragraph 1, above, were not manufactured in California, and therefore had crossed state lines at some point before they were found in the defendant's possession.

3. Before August 3, 1999, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The stipulation also provided:

The parties further stipulate and agree that no facts or evidence other than the foregoing stipulated facts shall be proffered by either party at the trial of this case. This stipulation shall be proffered to the Court as the evidence upon which the Court will decide the guilt or innocence of the defendant on the charge of being an ex-felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), as charged in the indictment in this case.

On the basis of the stipulated facts, the district court convicted Larson of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## DISCUSSION

### A. Case or Controversy

The government argues that the stipulation renders moot Larson's appeal

of the suppression ruling. The essence of the government's contention is that, because the gun and Larson's statements to Horwitz were never in evidence, the district court did not consider them when it convicted Larson. The stipulation itself served as an admission of each element of the crime, and supports the conviction in the absence of the disputed evidence. Therefore, the government argues, the evidence was superfluous to his conviction.

■ Before reaching the merits of any claim, we are compelled to determine whether there is a case or controversy that frames our jurisdiction over the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (explaining that the "first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes"); *see also Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1076–77 (9th Cir.2001). The requirement that a case or controversy anchor our jurisdiction as a threshold matter " 'spring[s] from the nature and limits of the judicial power of the United States' " and is " 'inflexible and without exception.' " *Steel Co.*, 523 U.S. at 94–95, 118 S.Ct. 1003 (alteration in original) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).

■ Three guideposts inform our consideration of whether we are fairly presented with a live controversy: (1) the existence of an injury-in-fact, (2) a fairly traceable connection between the injury and the challenged action of the defendant, and (3) a likelihood that a favorable decision will redress the claimed injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Steel Co.*, 523 U.S. at 103–04, 118 S.Ct. 1003. Here, the first element is met. Larson's conviction is the injury-in-fact.

However, the parties dispute the presence of the second and third elements. The government urges that, because the district court considered only the stipulation before convicting Larson, there is no traceable connection between the conviction and the evidence at issue in the suppression motion. A reversal of the suppression ruling would not affect the conviction and would, therefore, not redress the injury.

We agree that Larson's stipulation to all the elements of the crime created a separate foundation for his conviction, independent of the evidence at issue in the suppression hearing. Even if we were to determine that the evidence should have been suppressed, the stipulation, if valid, was effectively an admission of the elements of the crime. The district court's finding of guilt was based independently on the stipulated facts. Thus, the relief that Larson seeks—reversal of the district court's denial of his motion to suppress—would not result in overturning his conviction because the stipulation itself was sufficient to convict him.

We considered a similar issue in *United States v. Hole*, 564 F.2d 298, 300 & n. 2 (9th Cir.1977), in which the defendant challenged the denial of his motion to suppress a firearm prior to his conviction for being a felon in receipt or possession of a firearm under 18 U.S.C. § 1202(a)(1). There, the defendant had entered into a stipulation providing that he had been convicted of a felony, that he had knowingly received an operable gun from a gun dealer, and that the firearm had traveled in interstate commerce. *Hole*, 564 F.2d at 300. We raised the question *sua sponte* whether the suppression issue was moot for purposes of the appeal because "consideration of the firearm as evidence is not necessary in order to find appellant guilty beyond a reasonable doubt" when the stipulation appeared to be an admission of all of the

elements of the offense. *Id.* at 300 n. 2. Nevertheless, we proceeded to review the suppression ruling because the government had not raised the mootness issue, and the district court had received the rifle in evidence and may have considered it in conjunction with the stipulation. *Id.*

The stipulation to which Larson agreed, like the one in *Hole,* constitutes an admission of all the elements of the crime. We agree with Larson that the admission of the gun into evidence in *Hole* does not distinguish this case, because it is cumulative of the admission in the stipulation that Hole had received the gun. *Id.* at 300. However, the court's reluctance in *Hole* to address the mootness issue in the absence of briefing by the parties cannot divert us from our duty to assure ourselves of the existence of a live case or controversy. The government has squarely presented the mootness issue here.

We are careful to note that a stipulated-facts trial will not in the normal course deprive this court of jurisdiction. Here, the stipulation consisted of Larson's admissions of the elements of the crime. Had the stipulation described instead the evidence or testimony that the government intended to offer at trial, including the gun, Larson's statements, and Horwitz's testimony, there would be no question of mootness because suppression of that evidence would unravel the conviction. For example, had the stipulation reflected that the government would have offered Horwitz's testimony regarding Larson's pre-*Miranda* statements, a ruling on appeal suppressing those statements would annul the effect of the stipulation. Alternatively, had the parties conducted an abbreviated court trial at which the challenged evidence was admitted, appellate jurisdiction over the suppression ruling would have been assured.[1]

Here, however, Larson stipulated to all the elements of the crime. If this stipulation is found to be valid, there would no longer be a live controversy relating to the suppression motion and thus we would have no jurisdiction.

## B. Knowing and Voluntary Surrender of Larson's Appeal

The stipulation moots Larson's challenge to the suppression ruling only if it is valid. Consistent with the dictates of the Supreme Court, we approach mootness cautiously and with care to ensure that the party claiming the benefit of mootness—here, the government—has carried its burden of establishing that the claim is moot. *See Seven Words LLC v. Network Solutions,* 260 F.3d 1089, 1095 (9th Cir.2001) (stating that the party claiming mootness "has the heavy burden of establishing that there is no effective relief remaining for [us] to provide" (alteration in the original)) (quoting *GATX/Airlog Co. v. U.S. Dist. Ct.,* 192 F.3d 1304, 1306 (9th Cir.1999)). "It is no small matter to deprive a litigant of the rewards of its efforts.... Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 224, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000) (per curiam).

Larson argues that his appeal is not moot because the stipulation is invalid. He contends that if the stipulation bars his appeal of the suppression ruling, it violated his constitutional right to due process because he did not knowingly or voluntarily surrender his appeal of the suppression ruling. In other words, his stipulation was not a "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences."

---

1. Because Rule 11 explicitly confers appellate jurisdiction, conditional plea agreements do not engender the jurisdictional hurdle that this case erects. Fed. R.Crim. Proc. 11(a)(2).

*Adams v. Peterson,* 968 F.2d 835, 844 (9th Cir.1992) (en banc) (alteration in original) (citation and internal quotation marks omitted). This argument, however, was never presented to the district court. Larson argues that, in these circumstances, the proper course is to remand this case to the district court to determine whether he surrendered his appeal of the suppression ruling knowingly and intelligently. We agree.

■ A stipulated-facts proceeding is subject to certain constitutional restrictions to ensure due process. *Id.* at 839, 843. Larson's agreement to the stipulation was knowing and intelligent only if he entered into it with "sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 844. The test of whether Larson validly surrendered his right to appeal the denial of the suppression motion is whether he knew of the effect of the stipulation and made an intelligent decision to shoulder the consequences. *Id.*

■ Larson entered into the stipulation knowingly if he "weighed the costs and benefits of the stipulated-facts trial procedure and made a rational decision to pursue that route." *Id.* at 843. Courts "indulge every reasonable presumption against the waiver of fundamental rights." *United States v. Allen,* 831 F.2d 1487, 1498 (9th Cir.1987) (citation and internal quotation marks omitted). It appears that when

Larson agreed to stipulate, he may have been unaware that the chief cost of his factual stipulation was to bar his ability to appeal the suppression ruling. From documents that have been provided to us and from counsel's representations at oral argument, it appears that all those involved in the stipulated-facts court trial, including Larson, his counsel, the government, and the district court, were aware that Larson perceived the stipulation as an efficient path to appeal the suppression ruling.[2]

Before commencing the trial, the district court asked Larson a series of questions to measure his understanding of the effect of entering into the stipulation. The district court asked him whether he understood that he would be found guilty as a result of the stipulation and whether he understood the sentencing process and the maximum sentence that could result. It confirmed that he knowingly and voluntarily waived his rights to a jury, to have the government prove its case against him, to confront witnesses, to challenge the government's evidence and present his own, to subpoena witnesses on his behalf, to raise affirmative defenses, to testify on his own behalf, and to invoke his right against self-incrimination. The district court did not inform Larson that the stipulation would preclude him from appealing the suppression ruling or any other issue. None of the district court's questions touched on the consequences to his appeal of the suppression ruling.[3]

2. The documents provided to us include a letter from government counsel and defense counsel's declaration. Our review of them and of the record of the trial provides the basis for our conclusion that an evidentiary hearing is necessary. In light of our decision to remand this case for an evidentiary hearing, however, we deny Larson's motion and amended motion to supplement the record with the letter and declaration.

3. The circumstances of this case contrast with those in *Hensley v. Crist,* 67 F.3d 181, 185

(9th Cir.1995), in which Hensley challenged the constitutionality of his waiver of the right to a jury trial by asserting that it "could not have been 'knowing' when it was made in ignorance of all of the appellate ramifications." We held that Hensley's waiver was "knowing," because he was aware of the scope of the right he was waiving and did so as a strategic decision, and the trial court carefully questioned him and explained the maximum sentences which could be imposed upon him. Hensley waived his right to a jury trial for the strategic purpose of increasing

The arguments and documents submitted to us suggest that Larson may not have "understood the nature and consequences of his agreement to a stipulated-facts trial." *Adams*, 968 F.2d at 845. We cannot conclude, on this limited record, and especially where the district court has not had the opportunity to consider the threshold factual issues, that Larson entered into the stipulation "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 844. Our conclusion follows from our decision in *Wright v. Craven*, where we set aside Wright's admission of prior felony convictions because he was unaware that the chief consequence of the admission was to subject him to a mandatory life sentence. 461 F.2d 1109, 1109–10 (9th Cir.1972) (per curiam) (adopting the reasoning of *Wright v. Craven*, 325 F.Supp. 1253, 1258 (N.D.Cal.1971)). There, "neither the information, nor defense counsel, nor the trial judge . . . mentioned" the "heavy penalty" that the admission imposed on Wright. *Wright*, 325 F.Supp. at 1258. Here, it appears that Larson may not have known that a direct consequence of the stipulated-facts trial would be to moot his appeal of the suppression ruling.

However, because of the unusual manner in which this issue arose, the district court did not have an opportunity to consider the validity of the stipulation nor the evidence relevant to that determination. This factual determination is best addressed in the first instance by the district court.

We therefore remand to the district court for an evidentiary hearing to determine whether Larson entered into the stipulation knowing of the consequences to his appeal and voluntarily surrendering his appeal of the suppression motion. *See United States v. Mulloy*, 3 F.3d 1337, 1341–42 (9th Cir.1993) (remanding for a determination of whether the defendant knowingly and intelligently consented to a stipulated-facts court trial because it was not clear that he understood the stipulated fact procedure and agreed to be subjected to it). If the district court determines that Larson was not aware of the circumstances and likely consequences that the stipulation would have on his appeal, it should vacate the judgment and proceed accordingly.[4]

REMANDED for further proceedings consistent with this opinion.

---

the likelihood that he would prevail in subsequent proceedings if the State's witnesses dispersed. He knew that he was taking the risk that the strategy would not bear fruit. Here, in contrast, Larson entered the stipulation with the intent to preserve his appeal in possible ignorance of the consequence that it would moot his appeal.

4. Our disposition of this appeal renders it unnecessary to address Larson's Commerce Clause challenge to his conviction under 18 U.S.C. § 922(g). We note, however, that we rejected a similar argument in *United States v. Davis*, 242 F.3d 1162, 1162 (9th Cir.) (per curiam) (reaffirming our prior precedent upholding § 922(g) and confirming that the statute remains valid "even in the wake of the Supreme Court's most recent decisions regarding Congress's Commerce Clause powers"), *cert. denied,* —— U.S. ——, 122 S.Ct. 178, 151 L.Ed.2d 123 (2001).